# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-419

**JOSEPH RANDALL HEBERT**

**VERSUS**

**LOUISIANA STATE RACING ASSOCIATION**

**\*\*\*\*\*\*\*\*\*\***
## WRIT APPLICATION FROM THE
## FOURTEENTH JUDICIAL DISTRICT COURT
## PARISH OF CALCASIEU, DOCKET NO. 2012-4923
## HONORABLE KENT D. SAVOIE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.

**WRIT DENIED.**

**Saunders, J., dissents and assigns written reasons.**

Barry E. Roach
2917 Ryan Street
Lake Charles, LA  70601
(337) 433-8504
**ATTORNEY FOR PLAINTIFF/APPELLANT**
    Joseph Randall Hebert

James D. "Buddy" Caldwell, Attorney General
Rhea P. Loney, Assistant Attorney General
320 No. Carrollton Avenue, Suite 2-B
New Orleans, LA  70119
(504) 483-4000
**ATTORNEY FOR DEFENDANT/APPLICANT**
    Louisiana State Racing Commission

**COOKS, Judge.**

This writ application was filed by Defendant, the Louisiana State Racing Association (hereafter the Commission), seeking supervisory writs from the district court judgment allowing Plaintiff, Joseph Randall Hebert, the opportunity to conduct discovery. The district court also remanded the matter to the Commission for further proceedings and to consider any additional evidence gathered through discovery. This writ was granted to the docket and argued before this Court. For the following reasons, we find the trial court did not abuse its discretion in allowing Hebert to conduct discovery and deny the Commission's writ.

## FACTS AND PROCEDURAL HISTORY

This matter involves a racehorse doping dispute. Hebert is a licensed racehorse trainer in Louisiana. After winning their respective races during June of 2012, eight of Hebert's horses tested positive for Benzonatate. According to the Commission's brief, the Board of Stewards held a hearing and concluded that "each of the eight samples [from the horses] were positive for the presence of the drug Benzonatate, classified as an ARCI [American Racing Commissioners International] Category II Drug." The Board of Stewards suspended Hebert for six months and referred "the matter to the Louisiana State Racing Commission [for] further action due to the opinion of the Board of Stewards that the penalty imposed was insufficient."

An administrative hearing was set for November 27, 2012. The Commission alleges that on October 25, 2012, it sent Hebert a notice of the hearing in which he was informed he could bring an attorney to the hearing, present evidence, and subpoena witnesses.

Hebert appeared at the November hearing and testified. He admitted to administering Benzonatate to each of his horses. He acknowledged Benzonatate, as far as he understood, was a non-permissive medication pursuant to the rules of

2

racing. Hebert agreed to a three-year suspension of his license and to the redistribution of the purse money for the pertinent races.

Despite his agreement to accept the suspension at the hearing, Hebert appealed to the district court. Prior to the district court's scheduled hearing date, Hebert submitted a motion for leave to conduct additional discovery and present additional evidence. A hearing on the motion was held, and Hebert argued based on his investigation subsequent to the Commission hearing in November 2012, he learned that Benzonatate was not listed as a prohibited drug by ARCI until July 24, 2012, which was subsequent to the date any of Hebert's horses in question won its race.

The Commission countered that all drugs not listed as permitted drugs were prohibited, irrespective of whether they were specifically identified by ARCI. The Commission also noted the state chemist could classify a drug regardless of whether it was listed as a prohibited drug, and the state chemist in this case concluded the drug found in all of Hebert's horses was a prohibited Class II drug.

At the conclusion of the hearing, the district court allowed Hebert additional time to conduct discovery and to take a deposition of the state chemist. Subsequent to that decision, the Commission filed a writ application seeking the reversal of the trial court's ruling. That application was docketed and argued before this court.

**ANALYSIS**

In his motion for leave to present additional evidence and conduct further discovery, Hebert invoked the application of La.R.S. 49:964(E), which provides:

> If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the

3

additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.

The trial court found Hebert sustained his burden of proving that the evidence he sought was material and that he had good reasons for his failure to present evidence to the agency. In its writ application to this court, the Commission alleges the trial court abused its discretion in finding Hebert sustained the above burden of proving materiality and good reasons shown.

## I. *Materiality.*

"Evidence is material if the proposition it tends to prove or disprove is a matter in issue." *Matte v. La. Farm Bureau Cas. Ins. Co.*, 95-1308 (La.App. 3 Cir. 6/12/96), 676 So.2d 713, 715 (quoting *State v. Rogers*, 553 So.2d 453, 455 (La.1989)). Hebert argued to the trial court that whether or not Benzonatate was listed as a prohibited drug at the time of Hebert's violation was material to resolution of this matter. He notes Benzonatate did not become a prohibited drug by the ARCI until July 24, 2012, which was after Hebert's horses tested positive for that drug. Moreover, Hebert maintains he was unaware, until after the November 27, 2012 hearing, of the information that ARCI did not list Benzonatate as a Category II prohibited substance until after the alleged administering of that drug to his horses. According to Hebert, there is a question as to what the Commission knew regarding whether Benzonatate was a banned substance and whether the information was concealed from him. Furthermore, it was acknowledged by all parties that the penalty a violator is subject to is dependent on the category a listed drug falls into. Thus, its classification is clearly material to this case. We cannot say the trial court abused its discretion in determining that the information as to whether or not ARCI listed Benzonatate as a prohibited Category II drug at the time of the alleged infractions was material to the resolution of this case.

4

## II. *Good Reasons Shown.*

The primary argument made by the Commission in seeking to overturn the trial court's judgment allowing Hebert to conduct additional discovery is that Hebert failed to demonstrate good reasons for his failure to present evidence at the original agency hearing. The Commission maintains that Hebert had notice of the hearing which advised him that he may have an attorney present, offer evidence, and subpoena witnesses. We note the notice was not included in the submissions to this court, and, therefore, we cannot verify what was written in it or when it was sent. This notice was allegedly sent on October 25, 2012, and the hearing was held one month later. The Commission submits that the Board of Stewards issued the violations to Hebert during July of 2012. Thus, they maintain Hebert had sufficient time to prepare his defenses and to discover the evidence he now seeks to discover and introduce. The Commission also argues no good reasons as to why Hebert did not do so have been provided.

In its brief to this court, the Commission acknowledges the following argument that Hebert makes in regard to his failure to present or seek to present evidence at the prior hearing:

> After the fact, after the hearing, Mr. Hebert learned that Benzonatate, the alleged drug that was allegedly in his horses' blood system, was not a prescribed or classified drug by the American Racing Commissioners International until July 24, 2012.

The Commission maintains this argument alone does not constitute good reasons for Hebert's failure to present evidence at the November 27, 2012 hearing. Specifically, it contends the "failure of Mr. Hebert to look into a potential defense before the Commission meeting is not a valid reason for failing to present such defense."

Hebert counters that he had no reason to present any evidence at the hearing regarding Benzonatate because he was not aware that the substance, at the time of

5

the alleged administration to the horses, was not a banned substance by the ARCI. The following argument was presented by Hebert to the trial court:

> [T]he reason he didn't know [Benzonatate was not a banned substance by the ARCI when it was administered] is because the Louisiana [State] racing Commission is telling him. . . "[Y]ou've got a banned substance." They don't have any rule promulgated that says [B]enzonatate is a banned substance. There is nothing in the Louisiana [State] Racing Commission guidelines that says that. So. [Mr. Hebert] couldn't have known until he came to me and we did some research on [B]enzonatate.

It was acknowledged by the Commission that Benzonatate was in actuality classified by the state chemist, Dr. Steven Barker, as a Category II prohibited drug and not by ARCI. It was later adopted by ARCI as a Category II prohibited drug. The Commission noted La.Admin.Code tit. 35, § 1.1795 provides that unknown or unidentified drugs which are prohibited but not listed shall be appropriately classified by the state chemist upon discovery or detection. Thus, the Commission argues it was within the state chemist's purview to classify Benzonatate as a Category II prohibited drug. While this may be true, it does not change the fact that Hebert was under the belief that Benzonatate was listed as a Category II drug by the ARCI and not the state chemist. Hebert maintains if he was aware that the drug was categorized by the state chemist, he would have certainly deposed Dr. Barker.

It was acknowledged by both parties that the severity of any punishment for administering a prohibited drug is determined by its classification. There was no indication that Hebert was aware that the classification of Benzonatate as a Category II drug was made by Dr. Barker rather than ARCI. As stated earlier, all parties acknowledged that the penalty a violator is subject to is dependent on the category a listed drug falls into. Because the penalty Hebert was facing was made solely as a result of Dr. Barker's classification of Benzonatate as a Category II drug, it became apparent to Hebert *after* the Commission hearing that Dr. Barker's

6

deposition was material to this case. Hebert's reliance on the Commission's insistence that Benzonatate was an ARCI banned drug at the time of its administering arguably demonstrates good cause for his failure to take Dr. Barker's deposition prior to the hearing.

The trial court at the hearing noted the confusion that existed in this case, stating as follows:

> Here is what we are going to do. I am hearing all kinds of stuff. I am hearing that it might be this or it might be that or if it ain't this, it's got to be that.
>
> I am going to let [Hebert] go back – he is going to be able to take the deposition of the chemist that he needs to take and just develop whatever evidence that he needs to develop and represent it to the racing commission so that they can make, in my opinion, a more intelligent decision about all of the facts that should have been presented to them at the time.

Considering the vast discretion placed in the trial court, we cannot say he erred in finding Hebert presented good reasons for his failure to present the evidence he now seeks at the original agency hearing. The record does indicate a legitimate question as to what Hebert knew as to when, and even if, Benzonatate was a banned substance at the time of the alleged use of the substance. The record also establishes Hebert was unaware until after the original agency hearing that Benzonatate's classification as a Category II drug was made by Dr. Barker and not ARCI. Therefore, we will affirm the trial court's judgment and deny the Commission's writ.

**WRIT DENIED.**

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 13-419

**JOSEPH RANDALL HEBERT**

**VERSUS**

**LOUISIANA STATE RACING COMMISSION**

**SAUNDERS, J., dissenting.**

I respectfully dissent and would grant the commission's writ. I find that the trial court abused its discretion by allowing Hebert to modify the administrative record and present additional evidence.

The record shows that Hebert had full knowledge that using Benzonatate on his racehorses in order to gain an unfair advantage against his competitors was prohibited by the racing commission. At his administrative hearing, Hebert testified as follows:

> Q. And you admit that you gave a drug, Benzonatate, to each of these eight horses that I'm going to run through the dates on?
>
> A. That is correct.
>
> Q. And you admit that this was a nonpermissive medication pursuant to the rules of racing, correct?
>
> A. That's correct.

Hebert admitted guilt at his administrative hearing and accepted a three-year suspension and redistribution of the purses in connection with his use of Benzonatate. Less than three months after making these admissions and freely entering his plea, Hebert sought leave from the trial court to conduct additional discovery and present additional evidence. He sought to argue that Benzonatate was not included by name in the Association of Racing Commisioners

International, Inc.'s ("ARCI") list of prohibited drugs until the day after his final win.

Louisiana Revised Statutes 94:964(E) dictates that Hebert may only present such evidence if "the additional evidence is material and . . . there were good reasons for failure to present it in the proceeding before the agency."

First, the evidence Hebert seeks to add is not material. The majority notes that the category in which ARCI classifies a prohibited drug affects the penalty for administering that drug. The majority suggests that because of this, whether or not ARCI prohibited Benzonatate by name when Hebert used it is material. However, La.Admin.Code tit. 35, § I.1795(C) provides in pertinent part that "[u]nknown or unidentified drugs or substances which are *prohibited but not listed* shall be appropriately classified by the state chemist upon discovery or detection." (Emphasis added.) Therefore, drugs may certainly be prohibited without being listed, as was the case of Benzonatate at the time Hebert used it. In fact, La.Admin.Code tit. 35, § I.1727 states, "No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of any drug not permitted by Chapter 15 to any horse to be entered or entered for a race." Chapter 15 permits only two nonsteroidal/anti-inflammatory medications by name---Phenylbutazone and Oxyphenylbutazone---and six "bleeder" medications by name, none of which are Benzonatate. La.Admin.Code til. 35, §§ I.1505, 1509. Title 35 prohibits use of all other drugs at or near the track except as administered by a licensed veterinarian. La.Admin.Code tit. 35, §§ I.1501, 1505. Furthermore, La.Admin.Code tit. 35, § I.1717 states, "The use of a stimulant, depressant, or anesthetic in a manner that might affect, or tend to affect, the racing performance of a horse is prohibited." The additional evidence that Hebert seeks in conducting discovery regarding the state chemist's classification of Benzonatate, and

2

regarding the timeline of events in connection with its listing, is therefore not material.

Second, Hebert has presented no reason whatsoever for his failure to discover this information, including his failure to take the deposition of the state's chemist prior to the proceeding before the agency. Hebert argues that since Benzonatate was not listed as prohibited when he used it, he lacked notice that it was prohibited. Hebert's subjective knowledge of whether or not he was violating a rule does not affect the application of La.R.S. 49:964(E), nor does it provide a good reason shown for Hebert's failure to conduct discovery. Notwithstanding the fact that Hebert has already testified under oath that he believed the drug was prohibited by the rules of racing, such a notice requirement does not apply to an administrative case such as this.

Hebert argues that the additional evidence is material because he "did not realize that he was being punished without just cause." This discussion of Hebert's subjective knowledge implies a due process argument; however, I cannot agree that this case involves constitutional rights. No man has a right to participate in the highly regulated Louisiana race horse gaming industry; it is a privilege that may be likened to operating a gaming establishment or driving on Louisiana highways. As such, it is a privilege governed not by the notice requirement of the due process clause, but instead is within the discretion of the administrative body charged with regulating the activity---here, the commission. Mr. Hebert argues that he should not be penalized because the penalty for using Benzonatate on his horses was not yet established when he acted, as the drug was not yet classified at that time. This argument may succeed if constitutional or criminal law were to apply in this case. However, solely administrative law applies to this proceeding.

3

I would vote to grant the writ.  Neither Mr. Hebert's purported lack of awareness that Benzonatate was a banned substance until after the race nor his failure to conduct discovery provides sufficient justification under La.R.S. 49:964(E) for additional evidence to be allowed.  Accordingly, I would grant the writ.